VILLAGE OF BROWN DEER, A MUNICIPAL CORPORATION OF THE STATE OF WISCONSIN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 40317-84 "B." Filed May 19, 1986.

*Harold H. Fuhrman*, for the petitioner.
*James K. Harris*, for the respondent.

OPINION

CLAPP, *Judge*: This case is before the Court on respondent's motion to dismiss for lack of jurisdiction. The issues for decision are: (1) Whether petitioner's bonds are "prospective" obligations within the meaning of section 7478;[1] (2) whether petitioner's request for an extension of the temporary period constituted a request for determination under section 7478; and (3) whether petitioner's submission of a nonarbitrage certificate constituted a request for determination under section 7478.

On April 1, 1979, Village of Brown Deer (petitioner), a municipal corporation of Wisconsin, issued $4,500,000 of General Obligation Storm Sewer Bonds (bonds) to finance the construction of proposed storm sewers and related drainage facilities (the project). Petitioner represented in a nonarbitrage certification executed pursuant to section 1.103-13(a)(2), Income Tax Regs., that the proceeds from the bond issue would be expended for the project within 3 years of the issuance of the bonds.

Between April 1979, and March 1982, all bids received by petitioner for construction of the project greatly exceeded the proceeds from the bond issue. Petitioner's attempts to obtain alternative engineering and construction plans to construct the project at a cost not to exceed the proceeds of the bond issue were unsuccessful. In a letter dated March 15, 1982, petitioner requested from respondent an extension of the temporary period of time prescribed by section 1.103-14(b)(1), Income Tax Regs. Subsequent to the request, petitioner concluded that the unexpended bond proceeds would be used to retire the outstanding bonds.

On December 27, 1982, petitioner and respondent executed a closing agreement regarding the bonds. In a letter ruling dated September 28, 1984, respondent declined to extend the temporary period on the grounds that no proceeds from the bond issue had been expended for construction of the project. On November 27, 1984, pursuant to the closing agreement and respondent's letter ruling, petitioner paid $306,735.76 to the Internal Revenue Service

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended.

representing a portion of the interest earned on the bond proceeds which exceeded the interest paid to bond holders.

On December 3, 1984, petitioner filed a petition for declaratory judgment (governmental obligation) pursuant to section 7478. The petition requests the Court to enter a declaratory judgment determining that: (1) The bond issue in question is an obligation described in section 103(a); (2) respondent is required to grant a 2-year additional period pursuant to section 1.103-14(b)(5)(ii), Income Tax Regs.; (3) section 1.103-14(b)(1), (2), and (3), Income Tax Regs., is unauthorized by either the Internal Revenue Code or any provision of the United States Code; (4) section 1.103-14(b)(1), (2), and (3), Income Tax Regs., and section 103(c) are unconstitutional; (5) both the closing agreement entered into and letter ruling received by petitioner are unenforceable and void; and (6) the bonds in question are exempt from Federal income taxation or, in the alternative, the State of Wisconsin and its subdivisions may impose an income tax on the interest payable on the bonds of the United States.

On January 22, 1985, respondent filed a motion to dismiss for lack of jurisdiction upon the grounds that (1) the governmental obligations in question are not "prospective obligations" within the meaning of section 7478; and (2) petitioner has not requested the Secretary to determine whether its bonds are obligations described in section 103(a).

At the outset, we note that section 7478 only authorizes us to issue declaratory judgments regarding the narrow issue of the tax-exempt status of prospective bond obligations.[2] We therefore, even assuming that we can cross the threshold of section 7478, do not have jurisdiction to grant most of the relief that petitioner seeks in its petition for declaratory judgment (governmental obligation). As for petitioner's request for a declaratory judgment that the

---

[2]Sec. 7478(a) provides:

SEC. 7478(a). CREATION OF REMEDY.—In a case of actual controversy involving—

(1) a determination by the Secretary whether prospective obligations are described in section 103(a), or

(2) a failure by the Secretary to make a determination with respect to any matter referred to in paragraph (1),

upon the filing of an appropriate pleading, the Tax Court may make a declaration whether such prospective obligations are described in section 103(a). Any such declaration shall have the force and effect of a decision of the Tax Court and shall be reviewable as such.

bond issue in question is an obligation described in section 103(a), we grant respondent's motion to dismiss for lack of jurisdiction.

We only have jurisdiction to issue a declaratory judgment in a case of actual controversy involving *prospective* obligations. "Prospective" means "relating to or effective in the future." Webster's Ninth New Collegiate Dictionary (1983). Petitioner's bonds were issued on April 1, 1979; they are not "prospective" obligations.

Petitioner contends that "prospective," when used in the context of section 7478, refers to the end of the 3-year temporary period established in the regulations.[3] Petitioner's argument is that bonds may be arbitrage bonds under section 103(c), and hence not tax-free bonds under section 103(a),[4] if the proceeds of the bond issue are invested in

---

[3] Sec. 1.103-13(a)(1), Income Tax Regs., provides:

(a) *Scope*—(1) *In general.* Under section 103(c)(1), an arbitrage bond shall be treated as an obligation not described in section 103(a)(1) and sec. 1.103-1. Thus, the interest on an arbitrage bond will be included in gross income and subject to Federal income taxation. In general, arbitrage bonds are obligations issued by a State or local governmental unit, the proceeds of which are reasonably expected to be used to acquire other obligations where the yield on such acquired obligations will be materially higher than the yield on the governmental obligations during the term of such governmental issue. * * *Under paragraph (b) of sec. 1.103-14, the *investment of all or a portion of the proceeds of an issue of obligations for a temporary period or periods will not cause such obligations to be arbitrage bonds regardless of the yield produced by such investment.* * * *

Sec. 1.103-14(b)(1), (2), (3), and (4), Income Tax Regs., provides:

(b) *Temporary period.*—(1) *In general.* Original proceeds and investment proceeds of an issue of governmental obligations that are invested in acquired obligations during a 3-year period (or the period determined under paragraph (b)(5) of this section) beginning on the date of issue are invested for a temporary period if the requirements of paragraph (b)(2), (3), and (4) of this section are satisfied. * * *

(2) *Expenditure test.* (i) An amount equal to 85 percent of spendable proceeds must be expended on the project or projects by the end of the period described in paragraph (b)(1) of this section which applies to the issue.

\*        \*        \*        \*        \*        \*        \*

(3) *Time test.* (i) Within 6 months after the date of issue of the governmental obligations, the State or local governmental unit must incur a substantial binding obligation to commence or acquire the project or projects, whether or not identified on the date of issue, to be financed by the issue. * * *

\*        \*        \*        \*        \*        \*        \*

(4) *Due diligence test.* After a substantial binding obligation to acquire or commence the project or projects is incurred (as described in paragraph (b)(3) of this section), work on or acquisition of the project or projects must proceed with due diligence to completion.

[4] Sec. 103(a) and (c) provides:

SEC. 103(a). GENERAL RULE.—Gross income does not include interest on—

(1) the obligations of a State, a Territory, or a possession of the United States, or any political subdivision of any of the foregoing, or of the District of Columbia; and

(2) qualified scholarship funding bonds.

other securities for longer than a "temporary period." A determination whether "prospective" obligations are described in section 103(a) therefore cannot be made until the expiration of the temporary period. Petitioner concludes that it follows that "prospective" must refer to the end of the temporary period.

The General Explanation of the Revenue Act of 1978 states:

The Act provides that the United States Tax Court is to have exclusive jurisdiction in the case of an actual controversy involving a determination (or failure to make a determination) by the Internal Revenue Service as to whether interest on a prospective obligation is exempt from Federal income taxation. For purposes of this provision, *a prospective obligation means an obligation * * * which has not been issued at the time a petition seeking a declaratory judgment is filed* with the Tax Court. A suit under this provision can be brought only by the prospective issuer which has sought a determination regarding the tax-exempt status of its proposed issue. [Staff of the Joint Comm. on Taxation, 95th Cong., 2d Sess., General Explanation of Revenue Act of 1978, 185-186 (J. Comm. Print 1979). Emphasis added.]

The emphasized language clearly refutes petitioner's contention. Furthermore, section 7478 was enacted because Congress was concerned that *proposed* issues of municipal bonds could not be marketed if an issuer received an adverse letter ruling or failed to obtain a letter ruling. See S. Rept. 95-1263, on H.R. 13511, 95th Cong., 2d Sess. (1978), 1978-3 C.B. (Vol. 1) 315, 448-450; H. Rept. 95-1800 (Conf.) (1978), 1978-3 C.B. (Vol. 1) 521, 574. Thus, our use of the everyday meaning of the word "prospective" comports with the congressional concern which resulted in the enactment of section 7478.

Because we do not adopt petitioner's definition of "prospective," the request for ruling dated March 4, 1982, regardless of whether it requested a determination under section 103(a) or merely an extension of the temporary period, cannot be a request for determination under section 7478. Thus, petitioner cannot prevail as to the second issue.

Finally, petitioner contends that the submission of the

---

* * * * * * *

(c) ARBITRAGE.—

(1) SUBSECTION (a)(1) OR (2) NOT TO APPLY TO ARBITRAGE BONDS.—Except as provided in this subsection, any arbitrage bond shall be treated as an obligation not described in subsection (a)(1) or (2).

nonarbitrage certificate and subsequent inaction by respondent effectively confers jurisdiction under 7478(a)(2). In the present case, the certificate stated that the proceeds from the bond issue would be expended for the project within 3 years of the issuance of the bonds. This statement is not equivalent to a request for determination that prospective obligations are ones which are described in section 103(a).

To reflect the foregoing,

*An appropriate order will be entered.*